Warren CHAILLE, Dorris Warren Stewart, Elizabeth Warren Guthrie, David L. Warren, Jr., and Ella Warren Henslee, Plaintiffs-Appellees,

v.

Max H. WARREN, Sr., Max H. Warren, Jr., Edward R. Warren, John L. Warren, Patty Henslee Anderson, Eloise Henslee Corwin, Martha Warren Dowling, and Guy M. Warren, Defendants,

Vallie Dee Warren Johnson and Christine Warren Collier, Defendants-Appellants,

Federal Land Bank, Intervenor.

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 23, 1985.

Application for Permission to Appeal Denied by Supreme Court Aug. 26, 1985.

Charles N. Griffith, Waverly, plaintiffs-appellees.

Claude Callicott, Callicott, Marshall & Havron, Nashville, Mark H. Collier, Dickson, defendants-appellants.

OPINION

LEWIS, Judge.

In December, 1896, H.E. Warren died. At the time of his death he owned several parcels of real estate, 689 S.W.2d 173 (Tenn.App.1985). This Court, in *Chaille v. Warren*, 635 S.W.2d 700 (Tenn.App.1982), held in regard to his real estate that there was a partial intestacy, that by the terms of his will, his wife was given a life estate in the real estate, and that Mr. Warren failed to dispose of the fee. Therefore, at his death the fee vested in Mr. Warren's six children.

Subsequent to the death of Lula Warren, a partition suit was filed asking that the real estate be sold and that proceeds of the sale be divided among those children then living and/or the grandchildren of H.E. Warren.

Pursuant to order of the Chancery Court, Juanita Quarles, Clerk and Master, sold the real estate.

One parcel was sold to Ronnie Dacus, Harold Thompson and Don Bridges. Subsequently, Mr. Thompson and Mr. Bridges conveyed their interest in the real estate to Ronnie Dacus. The record does not show the amount paid by Mr. Dacus and others for the property. There was at least one "purchase-money note" given by Dacus, Thompson and Bridges in payment of the real estate. That note is as follows:

> 48 months after date, we, or either of us, promise to pay Juanita Quarles, Clerk and Master of the Chancery Court at Waverly, Tenn., or her successor in office, the sum of Three thousand three hundred seventy-five and no/100 Dollars, with interest from date hereof at 10% (ten percent).
>
> This note is given for, and is a lien on, the property purchased by the undersigned Ronnie Dacus at a sale made by said Clerk and Master, under a decree pronounced by said Court at the November Term 1979, in the cause of Warren Chaille, et al vs. Max H. Warren, Sr., et al, No. 18–42 on the Rule Docket of said Court and to pay all costs and attorney fees if placed in the hands of an attorney for collection.
>
> Witness our hands this the 2nd day of February, 1980.
>
> /s/ Ronnie Dacus
> /s/ Harold Thompson
> /s/ Don Bridges

Mr. Dacus failed to pay the note when due on February 2, 1984. On March 14, 1984, and again on April 5, 1984, Mr. Dacus was notified by the Clerk and Master that the note was past due. Mr. Dacus did not respond and, thereafter, the Clerk and Master moved for judgment on the note "in her name for the use of those entitled to the proceeds thereof, and for the enforcement of the lien specified on the face of said note."

The Chancellor, on the 11th day of July, 1984, found that the note was due and payable and ordered that the land be sold "after advertising according to law." Copies of the July 11th judgment were sent to all attorneys of record on the 16th of July, 1984.

On October 22, 1984, in response to a "Motion for Resale," the Trial Court entered an order appointing Mr. Charles H. Griffith, the original attorney for plaintiffs, as attorney to collect the note, to perform a title search, and to give notice to all junior lienholders as "to the date, time and location of resale." In that same order, Mrs. Quarles was appointed Special Commissioner to hold the sale. Copies of this order were sent to all attorneys of record on the 24th of October, 1984.

The resale was had and the property was sold to Mr. Sam Reynolds for $8,000.

In an order entered on the 17th of November, 1984, the Trial Court confirmed "in all things" the Special Master's Report, it being "unexcepted to." The order provided that title to the real estate was divested out of Ronnie Dacus and vested in Sam Reynolds. The proceeds of the sale were ordered disbursed as follows:

1.) Payment of purchase money note and interest to 11-7-84   $3,978.99

| 2.) | Costs of the cause | $ 35.00 |
|---|---|---|
| 3.) | Publication and advertising costs | 109.60 |
| 4.) | Taxes for 1983 and 1984 | 157.49 |
| 5.) | Fee of Special Master | 250.00 |
| 6.) | Attorney's fee for Charles N. Griffith | 1,600.00 |
| 7.) | Balance payable to the Midland Bank & Trust Co. | 1,868.92 |

Copies of the order confirming the sale were sent to all attorneys of record on the 28th of November, 1984.

On December 21, 1984, a "Notice of Appeal from Order Confirming Sale" was filed by two of the original defendants, Christine W. Collier and Vallie Dee Warren Johnson. On appeal, they assert the following issues:

1. Whether the original attorney for plaintiffs, and/or the Court-appointed attorney, as the case may be, gave notice to adversary counsel, or to the other parties, as required by Rules 5.01, 5.02 and 5.03, Tennessee Rules of Civil Procedure.

2. Whether the party defendants were afforded due process of law, as required by both the Federal and State constitutions.

3. First, whether the Lower Court committed error in making an appointment of an attorney when this same attorney was already representing parties to the lawsuit.

Secondly, whether the Lower Court can make an appointment of an attorney to represent the defendants, when they feel they were there and then being fairly, competently and honorably represented.

4. Whether the Lower Court had the power and authority to appoint a Special Commissioner, under the facts of the instant case, and under the guidlines [sic] laid down by our Supreme Court, that is to say, under its definitions of "Special Commissioner."

5. Whether the Lower Court appropriately took up matters in the Lower Court when the record was on appeal to this Honorable Court, with the entire record being before it, notwithstanding its consideration of only a part of the entire record.

The question finally becomes whether one (1) case can be litigated in the Lower Court and Appellate Court simultaneously.

6. Whether the providing for the appointment of Special Commissioner would be a legislative or a judicial act, and in the event it is found to be a judicial act, would it not be permitted by Article VI, Section 6 of the Tennessee Constitution.

Whether, in the second instance, a Clerk can motion the Court, and the Court can sell property.

It is believed, under our precedents, as well as the precedents of sister states, the Court can only confirm sales, made at the request of competent parties, other than the Clerk of the various courts. Also, it is believed the authorities suggest the Courts refrain from so selling, but permits the confirming thereof.

■ Appellants' arguments in regard to these issues are rambling and make little or no sense. They utterly fail to comply with Rule 6(a) of the Court of Appeals which provides as follows:

Written argument in regard to each issue on appeal shall contain:

1. A statement of the alleged erroneous action of the trial court which raises the issue, with citation to that part of the record where the alleged erroneous action is recorded.

2. A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

3. A statement reciting wherein appellant was prejudiced by such alleged error, with citation to the record showing where the resultant prejudice is recorded.

Nowhere in their brief have the appellants shown where any action of the Trial Court has resulted in any prejudice to them. When asked at oral argument how the ap-

pellants had been prejudiced by the Trial Court's action in this matter, appellants' attorney completely failed to cite any prejudice. His only response was that he was appealing in order to protect the estate and that since there was a family cemetery located on this property, someone in the family might wish to purchase the property if there was another sale.

The only interest either of these appellants has in the property purchased by Mr. Dacus is in the lien on the property for their share of the balance owed on the property.

We know of no way that either appellants or Mr. Warren's estate would or could benefit from a resale of the property. If there was a resale and the property brought $80,000 instead of $8,000, it would not inure to the appellants' benefit. From any sale of this property, the costs of the sale would be paid including the fees of the special master and attorney, the purchase money note would be paid, and any other legitimate costs, including taxes. Next in line would be the "junior lienholders," and, if there is sufficient money to pay the "junior lienholders," then any moneys over and above that amount would be paid to Ronnie Dacus, the owner of the real estate. Appellants, in any event, would be entitled to exactly what they are receiving from the present sale, their share of the outstanding "purchase money note."

No person has a right to appeal a judgment that does not in some way adversely affect him or her. To hold otherwise would put the appellate courts in the posture of deciding abstract issues which could have no effect on the appealing party.

This is the third time this case has been in this Court. Each time the question of attorney's fees has been involved and, in fact, has been one of the paramount issues. On the second appeal, attorney's fees was the only issue.

We find it somewhat enlightening in this case that appellants' attorney, the husband of one of the appellants, admitted at oral argument that the thing that brought this forcefully to his attention was when he received the order "and saw what Mr. Griffith was being paid as a fee."

The amount of the fee certainly could not affect the appellants. If anyone had a complaint concerning the amount of attorney's fees, it would have been the Midland Bank & Trust Company as a "junior lienholder." In this case, Midland Bank was the only one who stood to gain if the attorney's fees were less. The appellants gain nothing.

This appeal is wholly without merit.

■ Appellee has moved that attorney's fees and costs be taxed against the appellants because this appeal is frivolous. We are of the opinion upon a review of this record that the appeal is frivolous within the meaning of Tenn.Code Ann. § 27-1-122. "Successful litigants should not have to bear the expense and vexation of groundless appeals." *Davis v. Gulf Insurance Group,* 546 S.W.2d 583 (Tenn.1977). It is especially true in this case where appellees have to bear the expense of their attorney's fees on appeal in a matter where the appellants could gain absolutely nothing.

The judgment of the Trial Court is affirmed and, on remand, appellants will be taxed with all costs, including the costs of the appeal and appellees' expenses, including attorney's fees reasonably incident to this appeal.

TODD, P.J., and KOCH, J., concur.