**William F. WILSON and wife, Jacqueline Wilson, Plaintiffs–Appellants,**

v.

**Dr. James Edward RICCIARDI and Maryville Orthopaedic Clinic, P.C., Defendants–Appellees.**

Court of Appeals of Tennessee, Eastern Section.

June 9, 1989.

Permission to Appeal Denied by Supreme Court Sept. 11, 1989.

Hubert D. Patty, Maryville, for plaintiffs-appellants.

Steven C. Daves, with O'Neil, Parker & Williamson, Knoxville, for defendants-appellees.

OPINION

SANDERS, Presiding Judge (Eastern Section).

The pivotal issue on this appeal is whether or not an action for malpractice can be

maintained against a physician based upon his testimony in a judicial proceeding which is unfavorable to his patients in a suit for personal injuries. The answer is in the negative.

In 1984 the Plaintiff–Appellant, William F. Wilson, was involved in a motor vehicle accident in which he received certain injuries to his right shoulder. After the accident he went to the Defendant–Appellee, Dr. James Edward Ricciardi, who was an orthopaedic surgeon associated with Defendant–Appellee Maryville Orthopaedic Clinic, P.C., in Maryville. When Dr. Ricciardi examined the Plaintiff he found he had some limitation of motion in his right shoulder which the doctor thought was mild. He prescribed physical therapy for the Plaintiff and released him to go back to work some four to six weeks later.

In the interim the Plaintiff filed suit in the United States District Court in Alabama against Neely Transport, Inc., and Jerry Dana Capes for $1,200,000 for his personal injuries. In July, 1985, Plaintiff's counsel took Dr. Ricciardi's deposition for use in the trial of that case. In his deposition Dr. Ricciardi testified his final diagnosis of the Plaintiff was a tear of the glenoid label of the right shoulder. Based upon that diagnosis he gave the Plaintiff a 10% permanent physical impairment to the right upper extremity. This evaluation was based on methods used by the American Academy of Orthopaedic Surgeons. In May, 1986, counsel for the Plaintiffs asked Dr. Ricciardi to make another evaluation according to a book of the American Medical Association, which Dr. Ricciardi did and came up with an upper extremity impairment of 58%. The Plaintiffs took Dr. Ricciardi's deposition again on November 2, 1986. Dr. Ricciardi testified to these facts on direct examination. However, on cross-examination it was developed that since Dr. Ricciardi's former deposition an improved method of surgery had been developed to correct a tear of the glenoid label that was rather simple, very successful, usually restored the patient's ability to perform his regular work, and the cost ranged from $800 to $900. Dr. Ricciardi also testified he had recommended this surgery to the Plaintiff. It is this portion of Dr. Ricciardi's testimony which precipitated this litigation.

The Plaintiff filed suit and couched his complaint in terms of medical malpractice. However, his complaint, as pertinent here, says:

"Prior to May 7, 1987, the defendant, James Edward Ricciardi, was the regular orthopaedic surgeon for the plaintiff, having treated him over a period of time for injuries sustained in an automobile accident."

\* \* \*

"Prior to May 7, 1987, the defendant, Dr. James Edward Ricciardi, had given sworn testimony that as a result of the injuries received in the automobile accident the plaintiff had a physical impairment to his body of fifty-eight (58%) per cent.

"This testimony was given to be used in a lawsuit which the plaintiff had filed against the parties causing his injuries, in the United States District Court for the Northern Division of Alabama. In that lawsuit, the plaintiff, based upon the extent of his injuries, sought 1.2 Million Dollars from the other parties.

"That lawsuit was set for trial on the 18th day of November, 1986. On the second day of the trial of that lawsuit, the plaintiff was forced to settle the lawsuit for a small percent of the amount to which he was entitled. This settlement was forced upon him by the testimony of the defendant, Dr. James Edward Ricciardi given to the other parties lawyer, substantially as follows:

"That not withstanding the serious disability of the plaintiff resulting from the accident, Dr. Ricciardi could do a procedure in his office at the cost of eight or nine hundred dollars and that the plaintiff would be able to go back to work and do the same thing he was doing before his injury."

Plaintiff further alleged in his complaint that Dr. Ricciardi never, in fact, performed any such surgery; he negligently and recklessly gave such "medical advice"; he did

not comply with recognized standards of acceptable professional practice of health care in Blount County; he failed to diagnose and treat the Plaintiff. He further alleged in his complaint: "The plaintiffs allege that the specific acts of negligence, combined with other acts of negligence on the part of the defendants, which are not specifically alleged, directly caused, and/or contributed to the plaintiff's damages, particularly resulting in a pecuniary loss to the plaintiffs in obtaining a full recover for the damages for which they were entitled to against the other third parties mentioned."

The Defendants, for answer, admitted Dr. Ricciardi treated the Plaintiff for injuries received in the accident. They denied he had been guilty of any acts of negligence. They denied Plaintiff suffered any pecuniary loss as a result of his treatment.

The Defendants subsequently filed a motion for summary judgment, saying the complaint failed to state a claim upon which relief could be granted and as a matter of law Defendants did not commit any negligent breach of duty to the Plaintiff. They also relied upon the one-year statute of limitations. Defendants filed the affidavit of Dr. Ricciardi in support of the motion for summary judgment. Dr. Ricciardi attached to his affidavit copies of his two depositions and all of his medical records, including a letter from the Plaintiff to him dated May 20, 1987. In his affidavit he stated he was qualified to perform the surgery about which he testified and his care and treatment of the Plaintiff were in compliance with the acceptable standards of medical care for orthopaedic surgeons in Blount County.

The only response the Plaintiff made to the motion for summary judgment was an affidavit filed by him. The Plaintiff stated in his affidavit he was injured in an automobile accident in March, 1984. He went to see Dr. Ricciardi in April, 1984. Dr. Ricciardi treated him until July, 1984, when he told him he could not find anything wrong with him and ordered him back to work. He tried to work but couldn't. Dr. Ricciardi referred him to Dr. Craig Beeler in August, 1984. Dr. Beeler informed him

of the pros and cons of orthopaedic surgery but he decided against the surgery. Dr. Ricciardi had always indicated to him he could not do orthopaedic surgery until he gave his deposition in November, 1986. After that he asked Dr. Ricciardi, in May, 1987, to make arrangements to do the surgery but, after talking to Dr. Beeler again, he decided surgery would not be appropriate.

Upon the hearing of the motion it was granted by the court. A judgment was entered in keeping with the rulings of the court and the complaint was dismissed.

After the entry of the judgment the Plaintiff filed a motion to rehear. His motion, as pertinent here, states: "[F]or the following reasons:

"1. The plaintiff, never, at any time, insisted on any theory of recovery other than malpractice.

"2. This theory was discussed with the defendant's Insurance representative prior to filing suit.

"3. The defendant was always put on notice that the claim was for malpractice.

"Wherefore, the plaintiff request the Court to set aside the Judgment entered in this cause, and grant him a rehearing, or in the alternative permit him to strike from the Complaint anything that does not pertain to a malpractice suit and substitute sufficient words to convey such meaning concisely."

The court overruled the motion to rehear and the Plaintiffs have appealed. In presenting their issues for review, the Appellants say: "The sole issue in this case is whether the complaint states a cause of action for medical malpractice against the medical doctor."

The court, in his memorandum sustaining the motion for summary judgment, said:

"Counsel for Plaintiff has emphatically asserted that Complainant's cause of action is one for medical malpractice, not for breach of contract nor for negligent testimony given under oath by the Defendant, Dr. James E. Ricciardi, on November 7, 1986.

"The Court has read and re-read the pleadings, the deposition testimony offered

by both parties, the affidavits of the parties, the various and sundry medical records submitted and the entire record. The Court has reviewed all of the foregoing in the light most favorable to the Plaintiff.

"It is the opinion of the Court, and the Court finds, that Defendant's Motion is well taken and is granted."

■ It is a well-settled proposition of law in this jurisdiction that the testimony of a witness given in a judicial proceeding is absolutely privileged. Therefore, no civil action for damages may lie against a witness based upon his testimony in a case, though his testimony may have been damaging to one of the parties of the lawsuit in which he testified. *See, Buckner v. Carlton,* 623 S.W.2d 102 (Tenn.App.1981); *Felts v. Paradise,* 178 Tenn. 421, 158 S.W.2d 727 (1942); and *Cooley v. Gaylon,* 109 Tenn. 1, 70 S.W. 607 (1902). The reason for the rule is to protect witnesses from fear of subsequent actions based on their testimony. *See,* 31 A.L.R.3d, False Testimony–Civil Conspiracy, 1423 at § 2.

In *Buckner v. Carlton, supra,* the plaintiff filed suit for damages against the defendants after charges they brought against the plaintiff for misappropriation of funds resulted in plaintiff's dismissal from his job. The plaintiff alleged the defendants' charges were false, malicious, and brought in bad faith. The court, in sustaining the trial court's dismissal of the complaint for failure to state a claim upon which recovery could be had, stated:

We think [plaintiff's] allegations describe a conspiracy participated in by Mr. Kersey to "get" the [plaintiff] through false charges supported by false testimony before the School Board. In our opinion, these allegations do not state a claim for damages against Mr. Kersey because, as a general rule, there can be no recovery of damages for false testimony or for a conspiracy to give or procure false testimony. *Cooley v. Gaylon,* 109 Tenn. 1, 70 S.W. 607 (1902); *Felts v. Paradise,* 178 Tenn. 421, 158 S.W.2d 727 (1942); *Logan's Supermarkets, Inc. v. McCalla,* 208 Tenn. 68, 343 S.W.2d 892 (1961); Restatement (2d) of Torts, § 588.

This so-called witness immunity is stated in 31 A.L.R.3d, False Testimony–Civil Conspiracy, 1423 at § 2.

The general rule is that testimony given in a judicial proceeding, if pertinent thereto, is protected by an absolute privilege, even though given maliciously and with knowledge of its falsity. And accordingly, it is also the general rule that no civil action for damages lies for false testimony, or for subornation of false testimony, or for conspiracy to give or to procure false testimony.

623 S.W.2d 108.

The Appellant also argues in his brief that the court was in error in not permitting him to amend his pleadings as requested in his motion to rehear.

■ Rule 15.01 of the Tennessee Rules of Civil Procedure provides that the pleadings in a lawsuit may be amended "once as a matter of course at any time before a responsive pleading is served." Otherwise, amendment may be made only "by written consent of the other party or by leave of court." The rule provides that permission to amend be liberally granted. However, where a motion to amend pleadings is submitted after responsive pleadings have been filed in a case, the grant or denial of the motion is within the sound discretion of the trial judge. Once decided, such matters are seldom adversely reviewed on appeal unless abuse of discretion has been shown, *See, McKinney v. Educator & Executive Insurers, Inc.,* 569 S.W.2d 829 (Tenn.App.1978); *Merriman v. Smith,* 599 S.W.2d 548 (Tenn.App.1980); *Buck v. West,* 58 Tenn.App. 539, 434 S.W.2d 616 (1968), or failure to allow amendment will result in injustice. *See, Hopper v. Davidson County,* 206 Tenn. 393, 333 S.W.2d 917 (1960).

We fail to find the court abused its discretion in overruling the Plaintiff's motion.

We also find there is another compelling reason why the motion for summary judgment should have been granted. The trial judge did not comment on the precise reason for granting the motion for summary judgment but the Defendant relied upon

the one-year statute of limitations. The record shows the testimony given by Dr. Ricciardi about which the Plaintiff complains was given on November 7, 1986. The complaint in the instant case was not filed until November 12, 1987. If, however, the Plaintiff is not relying upon the testimony of Dr. Ricciardi as he has argued in his brief, his action is still barred by the statute because the undisputed proof shows Dr. Ricciardi had not treated the Plaintiff since July, 1984.

The issues are found in favor of the Appellee and the judgment of the trial court is affirmed. We also find this to be a frivolous appeal pursuant to T.C.A. § 27–1–123. Even if the Plaintiffs did not recognize this was a groundless lawsuit before it was filed, they certainly should have recognized it as such prior to appeal. "Successful litigants should not have to bear the expense and vexation of groundless appeals." *Chaille v. Warren*, 699 S.W.2d 801 (Tenn.App.1985); *Davis v. Gulf Insurance Group*, 546 S.W.2d 583 (Tenn. 1977).

The case is remanded for the trial court to fix damages pursuant to T.C.A. § 27–1–122. Cost is taxed to the Appellant.

LEWIS, J., and MARTHA C. DAUGHTREY, Special Judge, concur.