# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

**FILED**

**November 19, 1997**

**Cecil W. Crowson**

**Appellate Court Clerk**

| | | |
|---|---|---|
| **NANCY CATHERINE GERALDO,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Davidson Chancery No. 96-307-II |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 01A01-9610-CH-00467 |
| **VANDERBILT UNIVERSITY,** | ) | |
| | ) | |
| Defendant/Appellee, | ) | |
| | ) | |

## APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

### THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

For the Plaintiff/Appellant:          For the Defendant/Appellee:

David E. Danner                       William N. Ozier
Nashville, Tennessee                  Nashville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

ALAN E. HIGHERS, J.

WILLIAM C. KOCH, JR.,  J.

**OPINION**

This case involves a challenge to a student disciplinary board proceeding at a private university. The student alleges, among other things, that the university breached its contract with her and violated her rights to due process and fundamental fairness. The trial court granted summary judgment in favor of the university. We affirm.

Plaintiff/Appellant Nancy Catherine Geraldo ("Geraldo") was a sophomore attending Defendant/Appellee Vanderbilt University ("Vanderbilt"). In November 1995, Geraldo was enrolled in a class taught by Adjunct Assistant Professor Lori Troxel ("Troxel"). Troxel posted a grade sheet for her class, indicating her students' grades for all tests and assignments through that date. Shortly after the grade sheet was posted, Geraldo confronted Troxel with two tests on which Geraldo alleged she scored a grade higher than the grade indicated on the posted grade sheet. After examining the tests, Troxel became suspicious that the tests had been altered. These alleged alterations included the change of a grade from a "57" to an "87," the appearance that the quality of paper of some pages of the tests were different than others, and notations made by a marker that the professor did not use.

Troxel reported the incident to the Honor Council. Two student members of the Honor Council issued a report ("investigators' report") based on a conversation with Troxel. The Honor Council then held a formal hearing on December 5, 1995. The hearing and the related proceedings were governed by the procedures set forth in the *Vanderbilt University Student Handbook* ("handbook").

Geraldo attended the Honor Council hearing. The record does not indicate that she was represented by an attorney at this point. She was shown the test papers and questioned about the alterations appearing on the tests and the difference in the quality of paper used for some pages of the tests.[1] After the hearing, the Honor Council unanimously concluded that Geraldo was guilty of falsifying her test scores. After considering the flagrancy, premeditation, and dishonesty of the offense, the Honor Council recommended Geraldo's expulsion by a vote of 11-1.

On December 14, 1995, Geraldo appealed the Honor Council's action to the Vanderbilt Appellate Review Board ("ARB"), in accordance with guidelines in the handbook. Geraldo was

---

[1]Among other things, Geraldo told the Honor Council that she could not have copied pages to substitute on her tests because she has "a big fear of copy machines. . . ." She explained that her "hand got stuck in one" and that "physically, there was no way" she could have done it.

represented by counsel during the appellate process. Geraldo argues that her attorney was wrongfully denied access to the original test papers.

On January 17, 1996, the ARB met to consider Geraldo's appeal. Geraldo's counsel was not present at the meeting. The ARB advised Geraldo the next day that it had unanimously voted to uphold the Honor Council's decision. Geraldo was then expelled from the university.

Geraldo filed a complaint in Davidson County Chancery Court on January 29, 1996. Geraldo's Amended Complaint sought to enjoin Vanderbilt from expelling Geraldo and sought damages from Vanderbilt for breach of contract, conversion, and outrageous conduct.

In June 1996, both parties moved for summary judgment. Geraldo also filed a motion to amend her complaint a second time. Geraldo filed objections to affidavits proffered by Vanderbilt in support of its motion for summary judgment. After hearing these motions, the Chancellor granted Vanderbilt's motion for summary judgment, denied Geraldo's motion for summary judgment, and denied Geraldo's motion to amend her complaint.

On appeal, Geraldo raises a host of issues. The issues raised include Geraldo's contentions that the trial court erred in granting summary judgment in favor of Vanderbilt since Vanderbilt breached its contract with Geraldo, violated Geraldo's rights to due process and fundamental fairness and because a genuine issue of material fact existed. Geraldo also argues that the trial court erred by failing to rule on Geraldo's objections to the entry into evidence of affidavits filed by Vanderbilt in support of its motion. In addition, Geraldo maintains that the trial court erred in denying Geraldo's motion to amend her complaint.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* at 210-11. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law

2

are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Id.* Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Id.*

Geraldo argues first that Vanderbilt breached its contract with Geraldo. Geraldo asserts that the student handbook created a contract between Geraldo and Vanderbilt, and that Vanderbilt breached this contract by: denying her access to her test papers, denying her a right to counsel during the appellate process, denying her a presumption of innocence during the Honor Council hearings, ignoring an inaccurate statement in the investigators' report, violating the implied covenant of good faith and fair dealing, and conducting the appeals process in an "atmosphere of institutional hostility." Geraldo also maintains that her expulsion was counter to the punishment meted out by Vanderbilt in previous instances.

Even assuming, without deciding, that a contract existed between Geraldo and Vanderbilt with respect to the disciplinary proceedings, Geraldo's contentions can only be characterized as insubstantial and without merit.

Geraldo first alleges that Vanderbilt breached the contract since the ARB denied her access to the Honor Council records, including her original tests. Geraldo argues that the handbook incorporates by reference the federal Family Educational Rights and Privacy Act ("FERPA"), and that FERPA requires Vanderbilt to provide her with access to her academic work. 20 U.S.C.A. § 1232g (Supp. 1997). However, FERPA does not create a private cause of action. *See, e.g, Tarka v. Cunningham,* 891 F.2d 102, 104 (5th Cir. 1989); *Fay v. South Colonie Central School Dist.*, 802 F.2d 21, 33 (2nd Cir. 1986). Second, Geraldo was admittedly given access to her original tests during the Honor Council proceedings. In addition, the handbook enumerates the "grounds for review" that the ARB may consider. Examples listed include the determination of whether the Honor Council adhered to its procedures, the evidence was sufficient to support the Honor Council's ruling, and the penalty was justified. The handbook also states that, "[o]nly in extraordinary circumstances would the board reconsider the entire case." Consideration of Geraldo's appeal did not constitute an "extraordinary circumstance" which would necessitate a review of the original test papers in the ARB proceeding. This argument is without merit.

Geraldo next contends that Vanderbilt breached the contract by denying her a right to be represented by counsel during the ARB hearing. The handbook states:

> An accused may obtain professional legal representation, advice, and counsel. However, an attorney may not participate in or be present during an Honor Council hearing. . . An attorney representing an accused is encouraged to contact the Office of General Counsel and to work directly with that office.

The handbook does not grant the student the right to have counsel present during the ARB hearing. In fact, the handbook does not grant the student *herself* the right to be present during this proceeding. Therefore, the handbook did not create a contractual right for Geraldo's attorney to be present during her ARB hearing.

Geraldo next asserts that the Honor Council denied Geraldo her contractual right to a presumption of innocence, citing the handbook's statement that an accused is presumed innocent until proven guilty. Geraldo argues that the Honor Council breached this provision by asking her to explain the discrepancies evident in the tests. Geraldo contends that since she was "under the gun" to provide an innocent justification for the alterations, she was presumed guilty.

Obviously, the original tests and Troxel's statements were evidence that Geraldo was guilty of altering the tests. It is not difficult to imagine Geraldo's argument had she <u>not</u> been given the opportunity to explain the apparent alterations. This argument is without merit.

Geraldo next contends that, in light of the "usages of Vanderbilt," the university violated the contract by expelling her based on a first offense. Citing various statistics, Geraldo argues that since it has been extremely rare in the past for a student to be expelled, Vanderbilt breached its contract by expelling her.

Geraldo cites no authority for her argument. The handbook states that a student may be expelled for an honor code violation. The Honor Council hears each case individually and determines punishment based on the flagrancy of the violation, premeditation, and the accused's truthfulness throughout the process. In this case, the Honor Council apparently found that Geraldo was not credible, that the test alteration was flagrant and premeditated, and that even after it was detected Geraldo continued to maintain an untruthful stance. The Honor Council was fully warranted in determining that expulsion was the appropriate discipline.

Geraldo further alleges that Vanderbilt breached the contract because the investigators' report contained a factual error. According to Geraldo, the Honor Council relied on the report's statement

that the tests contained marks from two different types of red writing utensils utilized to grade the tests, as well as the report's "incorrect" statement that Professor Troxel never used a marker to grade the exams. Because the Honor Council relied on the investigators' report, Geraldo argues that Vanderbilt breached its contract by overlooking the report's inaccuracy.

Troxel testified that she used a red "flair tip pen" to grade tests, but never used a red "marker." The altered tests included marks made with a "marker." There is no indication that the report is inaccurate. Geraldo's argument is wholly without merit.

Geraldo further contends that a letter sent from Honor Council President Cory Hartquist ("Hartquist") to the ARB concerning Geraldo's appeal violated the "implied covenant of good faith in contract." This claim is based on the letter's statement that "Professor Troxel testified [at the Honor Council hearing] that she never used marker in grading anything." Geraldo argues that this alleged inaccuracy constitutes a "bad faith pronouncement" and a breach of contract.

Geraldo again attempts to manufacture an argument based on use of the term "marker," as opposed to "flair tip pen." Troxel's testimony can only be interpreted to mean that the altered tests contained marks from a writing instrument that she did not use in grading tests. There is no indication that the Hartquist letter is inaccurate. This argument is completely without merit.

Geraldo next argues that the ARB's consideration of her appeal was "conducted in an atmosphere of institutional hostility to her contractual right to appeal." According to Geraldo, the ARB acted in an "arbitrary and hostile manner" by denying her access to her original test papers. As noted above, Geraldo admittedly was given access to the original test papers in the Honor Council proceeding and had no right to them in the ARB proceeding. This argument is without merit.

Geraldo's brief on appeal repeats the identical litany of arguments, alleging they constituted violation of Geraldo's right to "fundamental fairness." Geraldo cites cases in other jurisdictions which recognize this cause of action independent of an action for breach of contract. The essence of her contention is that a university has a duty to refrain from expelling a student in an arbitrary or capricious manner.

As discussed above, Geraldo's arguments are without merit. Indeed, the record establishes that the proceedings against Geraldo were conducted in a fair manner and that the discipline was appropriate to the offense. Geraldo's argument on this legal theory is without merit.

5

Geraldo also asserts on appeal that summary judgment was inappropriate because new affidavits filed before the hearing created a genuine issue of material fact. Geraldo maintains that her filing of an affidavit by Nancy Geraldo, stating that she did not alter the tests, was sufficient to create a general issue of material fact.

However, the issues before the trial court, and this Court, do not concern whether Geraldo actually committed the offense. Rather, the trial court was to examine whether the proceedings against Geraldo were handled in accordance with her legal rights. Geraldo's affidavit, denying that she altered the tests, do not create a genuine issue of material fact as to the issues before the trial court. This argument is without merit.

Geraldo also contends that the trial court erred by granting summary judgment without ruling on Geraldo's objections to the affidavits submitted by Vanderbilt in support of its motion summary judgment. Geraldo argues that these affidavits violate Rules 402, 403, and 801 of the Tennessee Rules of Evidence, because they are irrelevant, prejudicial, and contain hearsay.

"Rulings on the introduction of evidence are usually within the discretion of the trial judge and will not be reversed except for an abuse of that discretion." ***Dockery v. Board of Prof. Responsibility,*** 937 S.W.2d 863, 866 (Tenn. 1996). In granting Vanderbilt's motion summary judgment, the trial court implicitly overruled Geraldo's objections to the supporting affidavits. Our review of the affidavits indicate no abuse of discretion by the trial court. This argument is without merit.

Finally, Geraldo asserts that the trial court erred by denying her motion to amend her complaint. Geraldo sought to amend her complaint "to conform to the issues developed in discovery and contained in her memorandum in support of her motion for summary judgment."

A trial court's denial of a Rule 15 motion to amend is discretionary and, on appeal, an abuse of that discretion must be shown. ***Wilson v. Ricciardi,*** 778 S.W.2d 450, 453 (Tenn. App. 1989). Geraldo does not explain how granting her motion to amend would have prevented summary judgment from being entered against her. We find no abuse of discretion by the trial court.

6

The decision of the trial court is affirmed.  Costs on appeal are taxed against the Appellant, for which execution may issue if necessary.


_____HOLLY KIRBY LILLARD, J.

**CONCUR:**


_____
**ALAN E. HIGHERS**


_____
**WILLIAM C. KOCH, JR.,  J.**