# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 23, 2012 Session

## APOLLO HAIR SYSTEMS OF NASHVILLE, INC. v. MICROMODE MEDICAL LIMITED ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 041561-III      Ellen H. Lyle, Chancellor**

---

**No. M2011-01480-COA-R3-CV - Filed November 29, 2012**

---

Plaintiff, a retail business specializing in hair restoration and related services that leased "beauty equipment" from a third party lessor, filed this action against the manufacturer of the "beauty equipment" and the distributor of the products asserting claims for intentional misrepresentation, negligent misrepresentation, and violations of the Tennessee Consumer Protection Act. Plaintiff obtained a monetary judgment against the distributor, however, the trial court summarily dismissed all claims against the manufacturer. Plaintiff appeals the summary dismissal of its claims against the manufacturer. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Charles W. Cross, Nashville, Tennessee, for the appellant, Apollo Hair Systems of Nashville.

Daniel P. Berexa, James Matthew Blackburn, Nashville, Tennessee, for the appellees, Micromode Medical Limited, T/A CACI International.

## OPINION

Defendant Micromode Medical Limited T/A CACI International ("CACI") is a British company that manufacturers "beauty equipment," including a product named "Quantum" and

another named "Futur-tec."[1] Defendant Apollo International of Ellicott City,[2] a sole proprietorship owned by Deborah Satterwhite, became the authorized distributor of CACI's Quantum and Futur-tec products to Apollo Hair System dealers in the United States in 2002.

Pursuant to its distribution agreement with CACI, Ms. Satterwhite had the right to market and sell CACI products and equipment to Apollo dealers in the United States. The distribution agreement provided that Ms. Satterwhite would purchase the CACI products or equipment in England with English currency, and that Satterwhite would designate the carrier and pay the carrier to import the products to the United States. The distribution agreement also provided that it was not a joint venture or partnership, and the parties were not agents or representatives of the other.

In the fall of 2003, Bill and Belinda O'Brien, President and Secretary, respectively, of Apollo Hair Systems of Nashville, Inc., attended one of Ms. Satterwhite's marketing presentations of CACI's products and equipment, including the Quantum and Futur-tec. The Quantum is used to improve the texture of the skin, and in the CACI brochure Quantum is identified as an "aesthetic treatment device." The Futur-tec device is used to exfoliate the skin to improve the texture of the skin. Following Ms. Satterwhite's presentation, the O'Briens advised Satterwhite that Apollo of Nashville wanted to obtain a Quantum and a Futur-tec, one of each. Ms. Satterwhite explained that the transaction would require a third party lessor and that she would make the necessary arrangements.

The structure of the various transactions, as facilitated by Ms. Satterwhite, is as follows: Satterwhite would buy and import one Quantum and one Futur-tec from CACI, Satterwhite would sell the devices to Bison Commercial Leasing Corporation ("Bison Leasing") for $27,000, and Bison would lease the two devices to Apollo of Nashville. As was contemplated, Satterwhite bought the two devices, sold them to Bison Leasing, and Bison Leasing and Apollo of Nashville entered into a lease agreement pursuant to which Bison Leasing leased the Quantum and Futur-tec to Apollo of Nashville. Acting in her capacity as corporate secretary, Belinda O'Brien signed an Acceptance of Delivery of the equipment upon executing the lease although the equipment had not been received by Apollo. Bison Leasing then sold the lease to a bank.

---

[1]CACI is not the manufacturer of either the Quantum or the Futur-tec and no claims were asserted against the manufacturers.

[2]The distribution agreement was executed on behalf of Apollo of Ellicott City by Deborah Satterwhite in her capacity as Managing Director. Apollo International of Ellicott City LLC, was chartered in Maryland as a limited liability company in October 2002; however, Ms. Satterwhite failed to complete the remaining organizational requirements. Further, Ms. Satterwhite never obtained a business license or a checking account for the company, and the company ceased to exist in October 2004.

Thereafter, the Quantum and Futur-tec were shipped to the United States. When the devices arrived at U. S. Customs on November 3, 2003, the Federal Drug Administration ("FDA") made the determination that the devices were not "beauty devices," and instead, the FDA classified the devices as "medical equipment." Medical equipment imported to the United States requires FDA approval and neither the Quantum or Futur-tec were approved medical devices. As a consequence, both devices were held by the FDA and did not clear Customs. Thereafter, the FDA determined that the Quantum was not a medical device and did not require FDA approval. Accordingly, the Quantum cleared Customs and was delivered to Apollo of Nashville; the Futur-tec, however, was not cleared and was never received by Apollo.

Following the hold of the devices in Customs, in an attempt to rectify the situation, Satterwhite had numerous discussions with the O'Briens, the bank that purchased the lease from Bison, and CACI. The bank agreed to cancel the lease if Ms. Satterwhite refunded the purchase money to the bank. CACI agreed to refund the proceeds it received from Ms. Satterwhite if the devices were returned to CACI.

The Futur-tec was returned to CACI and CACI remitted the purchase price to Satterwhite; however, Satterwhite did not refund any of the money to the bank, Bison Leasing, or Apollo. With the bank's consent, Apollo returned the Quantum to Ms. Satterwhite. Ms. Satterwhite then sold the Quantum to a third party; however, once again, she kept the proceeds.

On May 26, 2004, Apollo of Nashville filed this action against CACI and Deborah Satterwhite alleging claims for breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of express warranty, intentional and negligent misrepresentations, and violation of the Tennessee Consumer Protection Act. The complaint was amended in July 2004.[3] On May 4, 2005, CACI filed an Answer denying all liability, asserting Apollo failed to state a claim against CACI, and asserting Apollo failed to join an indispensable party, specifically Bison Leasing. Satterwhite filed a separate answer.

Pursuant to a scheduling order that set deadlines, *inter alia*, for discovery and filing dispositive motions, the last date on which dispositive motions could be filed was November 14, 2007, and all dispositive motions were to be heard on or before December 21, 2007. On that date, CACI filed a motion for summary judgment asserting there was no privity of contract between CACI and Apollo, and that Apollo could not prove the essential elements of its misrepresentation claims or its claim for violation of the Tennessee Consumer

---

[3]Neither Bison Leasing nor the bank that purchased the lease were ever parties to this action.

Protection Act. On the same day, Apollo filed a motion to file a second amendment to its complaint. Five days later, Apollo filed a motion for partial summary judgment.

The trial court denied Apollo's motion to amend following a hearing on the grounds of "plaintiff's undue delay in filing the motion to amend and plaintiff's failure to cure deficiencies by previous amendments." Apollo then filed a motion to alter or amend the order denying its motion to amend.

The competing motions for summary judgment and Apollo's motion to alter or amend came on for hearing on February 1, 2008. On March 25, 2008, the trial court issued a Memorandum and Order summarily dismissing all of Apollo's claims against CACI finding there were no genuine issues of material fact and CACI was entitled to summary judgment as a matter of law. The warranty claims were dismissed upon the finding of no privity of contract. The negligent misrepresentation claim was dismissed on the finding that Apollo of Nashville failed to demonstrate any proof supporting a claim for misrepresentation as the court could not identify any proof that there was communication between CACI and Apollo prior to the lease agreement. The court further found no intentional misrepresentations because Apollo's Amended Complaint failed to meet the requirement that claims for fraud be plead with particularity and there was no communication between Apollo and CACI prior to the lease agreement. The TCPA claim was summarily dismissed on the finding that Apollo failed to establish there was a genuine issue of material fact that CACI was guilty of an unfair or deceptive act resulting in an ascertainable loss to Apollo of Nashville. The trial court also denied Apollo's motion for partial summary judgment and its motion to alter or amend the order denying its motion for a second amendment to its complaint.

Apollo filed a notice of appeal challenging the dismissal of its claims against CACI; however, this court dismissed that appeal because the judgment appealed from was not a final appealable judgment. This court found the order was not final due to the fact the trial court had not ruled upon Apollo's claims against Satterwhite; thus, the case was remanded to the trial court. In August of 2011, summary judgment was granted in favor of Apollo against Satterwhite on Apollo's claims of misrepresentation, breach of contract, and violations of the TCPA and a judgment was entered against Satterwhite in the amount of $337,423.31. Thereafter, Apollo renewed its appeal of the dismissal of its claims against CACI. Ms. Satterwhite did not appeal the judgment against her and she is not a party to this appeal.

ANALYSIS

Apollo contends the trial court abused its discretion in denying its motion to amend the complaint and the court erred in dismissing its claims of intentional misrepresentation, negligent misrepresentation, and violation of the TCPA.[4]

## I. MOTION TO FILE SECOND AMENDMENT TO COMPLAINT

Apollo contends the trial court erred in denying its motion for leave to file a second amended complaint. Factors to be considered when deciding whether to grant a motion to amend include "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the amendment." *Merriman v. Smith*, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979).

The grant or denial of a motion to amend is within the sound discretion of the trial court, and the court's action will be reversed only for an abuse of discretion. *Sallee v. Barrett*, 171 S.W.3d 822, 825-26 (Tenn. 2005) (citing *Doyle v. Frost,* 49 S.W.3d 853, 856 (Tenn. 2001); *Henderson v. Bush Bros. & Co.,* 868 S.W.2d 236, 237–38 (Tenn. 1993)).

The trial court denied Apollo's motion upon the finding that the motion was untimely and futile, and the records supports both findings. Accordingly, we find no abuse of discretion.

This action was commenced in May of 2004. During the pendency of this case, the scheduling order was amended and deadlines extended on at least five occasions, mostly at Apollo's request. A final scheduling order entered into by the parties and approved by the court mandated completion of all discovery by October 24, 2007 and set the deadline for the hearing on all dispositive motions as December 21, 2007. Davidson County Local Rule of Practice Rule 26.03 directs that motions for summary judgment must be filed at least thirty-seven (37) days before the hearing date unless the parties otherwise agree. Counting backwards from the December 21, 2007 hearing date, the deadline for filing a motion for summary judgment was November 14, 2007.

CACI filed its motion for summary judgment on November 14, 2007. That same day, Apollo filed its motion to amend and Apollo provided no justification for not seeking to amend the complaint months earlier. The proposed amended complaint referenced a conversation that allegedly occurred between CACI President Dean Nathanson and Apollo

---

[4]Apollo does not appeal the dismissal of its breach of warranty claims.

President Bill O'Brien, in which Mr. O'Brien sought assurances from Mr. Nathanson that there would be no problems importing the Quantum and the Futur-tec into the United States. The amended complaint also stated a new claim for lost earnings as a result of Apollo not being able to use the Quantum and Futur-tec in its business operations. Accordingly, the motion to amend, if granted, may have rendered some or all of CACI's motion for summary judgment inconsequential, thereby, nullifying the deadlines set forth in the scheduling order.

Motions to amend are to be freely given. *Wilson v. Ricciardi*, 778 S.W.2d 450, 453 (Tenn. Ct. App. 1989). However, factors such as untimeliness, prejudice, and lack of good faith must be considered when determining whether such an amendment should be allowed. *Merriman*, 599 S.W.2d at 559. In this case, discovery had been completed by the parties on October 9, 2007, prior to the October 24, 2007 deadline mandated by the scheduling order. Apollo waited until the deadline for filing dispositive motions to seek to amend the complaint a second time. As noted above, Apollo gave no reason for the delay. Moreover, the assertions to be added by the amendment pertained to conversations of Bill O'Brien; thus Mr. O'Brien knew of these facts since 2003 yet Apollo waited until 2007 to add these facts to the complaint. It is also relevant that CACI had served interrogatories upon Apollo regarding the substance of the alleged misrepresentations, and Apollo answered the interrogatories stating that the only misrepresentations had been statements made by Satterwhite. Apollo's interrogatory responses did not identify any misrepresentations by CACI or Mr. Nathanson, its president.

The grant or denial of a motion to amend a pleading is within the sound discretion of the trial court. Considering the relevant factors, including the untimeliness of the motion and the fact the new allegations are in direct conflict with Apollo's discovery responses, we find no abuse of discretion in denying the late filed motion to file a second amended complaint.

## II. SUMMARY DISMISSAL OF APOLLO'S CLAIMS

Apollo contends that the trial court erred in summarily dismissing its misrepresentation claims and its claim that CACI violated the Tennessee Consumer Protection Act.

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App.

2001). It is not appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. The party seeking summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the nonmoving party's claim *or* show that the moving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008).

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008) The appellate court makes a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). As does the trial court, the appellate court considers the evidence in the light most favorable to the nonmoving party and resolve all inferences in that party's favor. *Martin,* 271 S.W.3d at 84; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, the appellate court first determines whether factual disputes exist. If a factual dispute exists, the court then determines whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn.1993).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party makes a properly supported motion, then the nonmoving party is required to establish the existence of the essential elements of the claim. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. If, however, the moving party does not properly support the motion, then the nonmoving party's burden to produce either supporting affidavits or discovery is relieved and the motion must fail. *McCarley*, 960 S.W.2d at 588; *Martin,* 271 S.W.3d at 83.

To make this showing and shift the burden of production, a moving party may: 1) affirmatively negate an essential element of the nonmoving party's claim; or 2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Martin*, 271 S.W.3d

at 83; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd*, 847 S.W.2d at 215 n.5. Whichever approach the moving party takes, both require more than assertions of the nonmoving party's lack of evidence. *Martin*, 271 S.W.3d at 83-84. In addition, the moving party must present evidence that more than "raises doubts" about the ability of the nonmoving party to prove its claim at trial. *Id.* at 84. The moving party must produce evidence or refer to previously submitted evidence. *Id.*; *accord Hannan*, 270 S.W.3d at 5. Thus, to negate an essential element of a claim, a moving party must refer to evidence that tends to disprove an essential element of the claim made by the nonmoving party. *Martin*, 271 S.W.3d at 84.

CACI, as the moving party, had the burden to *negate* an essential element of Apollo's claims of intentional misrepresentation, negligent misrepresentation, and violation of the TCPA, *or* establish that Apollo *cannot prove* an essential element of these claims at trial.[5] *See Martin*, 271 S.W.3d at 83 (citing *Hannan*, 270 S.W.3d at 5; *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5).

## B. INTENTIONAL MISREPRESENTATION AND VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

The trial court summarily dismissed Apollo's claims of intentional misrepresentation and violation of the Tennessee Consumer Protection Act by engaging in unfair or deceptive acts because Apollo failed to plead the circumstances supporting these claims with particularity.

The trial court summarily dismissed Apollo's claim for intentional misrepresentation because Apollo failed to plead the circumstances supporting such a claim with particularity as required by Tennessee Rule of Civil Procedure 9.02. Rule 9.02 states "[i]n all averments of [intentional misrepresentation] or mistake, the circumstances constituting [intentional misrepresentation] or mistake shall be stated with particularity."[6]

---

[5]Tennessee Code Annotated § 20-16-101 (2011), a provision enacted to replace the summary judgment standard adopted in *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008), is inapplicable to this case as this case was filed before July 1, 2011. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n. 2 (Tenn. 2011) (noting that section 20-16-101 is only applicable to actions filed on or after July 1, 2011).

[6]"Intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are all different names for the same cause of action. *Hodge v. Craig*, – S.W.3d –, No. M2009-00930-SC-R11-CV, 2012 WL 4486315, at *12 (Tenn. Oct. 1, 2012) (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn. 1999)).

In its complaint, Apollo stated the following circumstances to support its allegation of intentional misrepresentation by CACI:  "CACI intentionally or negligently misrepresented material facts concerning the aforesaid products, intending that those facts be acted upon and relied upon by plaintiff." Apollo did not set forth any additional facts in its complaint to identify with particularity the circumstances giving rise to its claim for intentional misrepresentation. Accordingly, we affirm the summary dismissal of Apollo's claim for intentional misrepresentation because Apollo's complaint fails to plead its intentional misrepresentation claim with particularity.

The trial court also dismissed Apollo's claim that CACI violated the Tennessee Consumer Protection Act for failing to plead the circumstances supporting the claims with particularity.

The circumstances supporting a  claim under the TCPA must also be plead with particularity. *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999) (citing *Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990)). In its complaint, Apollo's sole paragraph relating to its claim under the TCPA stated: "CACI's conduct constitutes violations of the Tennessee Consumer Protection Act, entitling APOLLO to an award of treble damages and reasonable attorneys fees and costs." As with its intentional misrepresentation claim, Apollo failed to state specific conduct that constituted a violation of the TCPA. Thus, we affirm the trial court's holding that Apollo's claim for a violation of the  TCPA should be summarily dismissed.

The trial court additionally found that Apollo's claims for intentional misrepresentation and violation of the TCPA should be summarily dismissed because there was no evidence in the record of a communication between CACI and Apollo prior to Apollo entering into the lease agreement for the Quantum and the Futur-tec and Apollo failed to establish a genuine issue of material fact that CACI was guilty of an unfair or deceptive act resulting in an ascertainable loss to Apollo. On appeal, Apollo argues the trial court erred in this finding and points to the affidavit of Bill O'Brien filed in support of its response to CACI's motion for summary judgment. In the affidavit, Bill O'Brien stated that a conversation occurred between CACI president Dean Nathanson and him prior to the execution of the lease agreement. Mr. O'Brien stated in his affidavit that he "specifically asked if there would be any problem with importing the CACI products into the U. S." and that Nathanson responded "that CACI already had the same products operating in the U. S. and that there were no problems importing these machines into the U. S."

The trial court excluded the consideration of this statement in O'Brien's affidavit finding that it directly contradicted a previous response provided by Apollo during interrogatories that other than speaking with a CACI employee about scheduling training for

the skin care devices, no communication occurred between CACI and Apollo. The trial court then found that based upon the cancellation by contradiction rule, the statement would not be allowed.

Apollo argues on appeal that the trial court erred in its reliance upon the cancellation by contradiction rule. We find this argument of no consequence because, if this statement is considered, Apollo still has not established an essential element of the claim, nor has it created a dispute of fact concerning an essential element, that element being that the statement was untrue when made.

A claim for intentional misrepresentation requires a showing that:

1) the defendant made a representation of an existing or past fact; 2) *the representation was false when made*; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damages as a result of the misrepresentation.

*Devorak v. Patterson*, 907 S.W.2d 815, 819 (Tenn. Ct. App. 1995) (quoting *Metro. Gov't of Nashville, Davidson Cty. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)) (emphasis added).

The statement by Nathanson at issue is that the skin care devices had previously been imported into the United States and that there were no problems with the importation. Nathanson's deposition and an exhibit submitted by CACI establish, without dispute, that over 20 of these devices had been shipped into the United States and no problems with their importation occurred prior to the FDA holding Apollo's two devices at Customs. Further, the Quantum device was received and used by Apollo for several months before it was returned to Satterwhite. Thus, even if the alleged conversation by O'Brien and Nathanson occurred, it is undisputed that Nathanson's alleged statement was not false when it was made. Thus, CACI has negated an essential element of Apollo's intentional misrepresentation claim.

We therefore affirm the summary dismissal of Apollo's intentional misrepresentation claim and its TCPA claim.

C. NEGLIGENT MISREPRESENTATION

The trial court dismissed Apollo's claim for negligent misrepresentation upon the finding there was no communication between CACI and Apollo prior to Apollo entering into

the lease agreement. Apollo contends this was error.

A claim for negligent misrepresentation requires a showing that: 1) the defendant was acting in the course of a transaction in which it had a pecuniary interest; 2) the defendant supplied faulty information meant to guide others in their business transaction; 3) the defendant failed to exercise reasonable care in obtaining or communicating the information; and 4) the plaintiff justifiably relied upon the information. *John Martin Co. v. Morse/Diesel Co.*, 819 S.W.2d 428, 431 (Tenn. 1991).

Apollo's claim for negligent misrepresentation stems from the alleged conversation between Nathanson and O'Brien in which Nathanson stated that the skin care devices were previously imported into the United States and there had been no problems with their importation. As we noted in our discussion of the intentional misrepresentation claim, such a statement was true, as both devices had previously been sent to the United States and there were no problems with importation of the skin care devices prior to the devices at issue in this action. Thus, even if the trial court allowed the statement contained in Mr. O'Brien's affidavit, the truth of Nathanson's statement negates the essential element that "the defendant supplied faulty information" and thus CACI negated an essential element of Apollo's negligent misrepresentation claim. Therefore, we affirm the trial court's summary dismissal of Apollo's negligent misrepresentation claim.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Appellant, Apollo Hair Systems of Nashville, Inc.

_____
FRANK G. CLEMENT, JR., JUDGE