## Kitchen, Whitt & Co. et al. v. Welch et al.

(Decided March 24, 1936.)

WHEELER & WHEELER for appellants.

JOHN L. HARRINGTON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

The judgment appealed dismissed a petition and intervening petition of creditors of Elijah Welch, seeking to set aside certain conveyances as fraudulent.

On December 2, 1931, the appellant, Kitchen Whitt & Co., filed suit on a merchandise account for $743.42, with interest from November 1, 1930, and obtained judgment by default on February 1, 1932. A lis pendens notice purporting to assert a lien on the property involved was filed December 10, 1931. On December 31, 1931, there were lodged for record the following deeds from Elijah Welch to his sons, all dated and acknowledged on June 27, 1931, namely: To Arthur, a parcel of about one-fourth of an acre; to Mart, a parcel of 6.6 acres; and to Charlie and Ralph, a tract of 100 acres. The recited consideration in each deed is $1 and love and affection.

For many years Elijah Welch had conducted a store at Whitehouse, in Johnson county. He had about $9,500 in accounts on his books and a stock of goods.

The accounts were worthless in a large measure, and the value of the merchandise questionable. The evidence of the defendants, which seems to be more substantial, is that at the time he made these conveyances he was solvent. That of the plaintiff, consisting principally of the testimony of a deputy sheriff, who did not levy an execution on the goods and store fixtures because he considered them insufficient to pay the costs, related to a period perhaps a year later.

In 1929, Arthur Welch was the only one of the four sons who was over twenty-one years of age, but the others were grown. Arthur was a railroad telegrapher in Portsmouth, Ohio, making $167 a month, and the others worked about in the community. The positive testimony of the father and sons is that the boys wanted to buy this property, and they agreed on a price of $1,300 for all of it. On November 18, 1929, they signed a contract which, although crude in expression, was sufficient to cover the transaction. A payment of $300 was then made, and it was provided that when the balance should have been paid deeds would be made. This contract stated that the farm was being sold to Arthur, Charlie, and Ralph, but the deed was only to the latter two. The grantees took possession and control of the property at the time. All of their evidence, supported by numerous receipts, shows that payments were made along until June 28, 1931, when the deeds were made. Their testimony is that at that time Arthur paid the balance of $600 to the father, and took the notes of the others to himself. The entire property was then worth probably $1,400, but since has depreciated perhaps two-thirds in value because of the closing of the mines. According to Elijah Welch, the money he received from his sons was paid to his creditors. Other than Kitchen, Whitt & Co. only one other creditor came into the case, and that was the appellant, Crump & Field, whose account originally for $403.11 had been reduced from November, 1930, to April 1, 1932, to $127.82.

The record discloses that at the same time Welch conveyed his home to his two daughters, who were minors, but the attack upon that deed is not before us.

The case simply presents the application of the

general law relating to conveyances alleged to have been made in defraud of creditors to the facts, or to what the court finds to be the fact. While there are present certain so-called "badges of fraud," there is no contradiction of the positive testimony of the parties supported by documents appearing to be regular. The only question raised as to these receipts is that they were on the same kind of paper and had not been folded. It is explained that the father had a tablet upon which he wrote all the receipts.

It seems to us the chancellor reached the right conclusion.

Accordingly, the judgment is affirmed.