IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 21, 2006 Session

# MELODY WESTON, PERSONAL REPRESENTATIVE, ET AL. v. COMMUNITY BAPTIST CHURCH OF WILSON COUNTY

Appeal from the Chancery Court for Wilson County
No. 01085     C. K. Smith, Chancellor

No. M2004-02688-COA-R3-CV - Filed on February 5, 2007

This case arises from a dispute between a church and the estate of one of its former members over money given by the former member and her spouse to enable the newly-formed church to pay off a loan on its property. The estate contended that the money was a gift subject to a condition subsequent, with return of the gift required in the event the church ceased existence. The church admitted that it had accepted the gift, but argued that it never accepted any conditions. The court took note of a church resolution that ratified the alleged condition and ruled in favor of the estate. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Randle S. Davis, Nashville, Tennessee, for the appellant, Community Baptist Church of Wilson County.

James H. Kinnard, Lebanon, Tennessee, for the appellee, Melody Weston, Personal Representative et al.

## OPINION

### I. THE FOUNDING OF A NEW CHURCH

In 1999, some members of the Vine Baptist Church in Lebanon, Tennessee began discussing the possibility of starting a new church. The three men who spearheaded the new venture, Bryan Hubbard, Thomas Watson, and Jessie Hardin, kept other potential members informed as their plans progressed. They located a piece of property in Lebanon with a trailer on it, which they thought would be a good location for a new church building.

The three approached the bank for a loan to purchase the property. A bank officer suggested that it would be a good idea for them to obtain a charter for the church. On August 26, 1999, they filed a charter with the Secretary of State incorporating the Community Baptist Church of Wilson County ("Church") as a nonprofit religious corporation under state law. *See* Tenn. Code Ann. § 48-52-101 and 102.

R.C. "Mutt" Weatherly and his wife, Betty Weatherly, were both interested in taking part in the new church. They loaned $12,500 to be used for the down payment and closing costs on the 6.18 acre property. The loan carried no interest. A promissory note was executed in the name of Community Baptist Church of Wilson County signed by Mr. Hubbard and Mr. Watson as trustees. The note was eventually paid off in full by installments of $1,000 per month collected from donations to the church over the following year.

However, the bank was unwilling to make a loan directly to the church itself. Mr. Hubbard and Mr. Watson therefore borrowed $46,400 in their own names from First Tennessee Bank in order to close on the property. The closing took place on September 7, 1999. A warranty deed and deed of trust were executed on the same day. The warranty deed recited that the property was being transferred "unto Bryan E. Hubbard and Thomas R. Watson, Co-Trustees with full power to mortgage, sell, transfer and convey without the joinder of any beneficiary."

Several meetings were conducted both before and after the closing for individuals wishing to become members of the new church. During at least one meeting, a draft of a proposed constitution with by-laws for the church's governance was circulated. October 10, 1999 was the church's "Constitution Day." On that day, the constitution and by-laws were formally adopted.[1] Thirty-eight individuals became charter members of the church on that day, and Mr. Hubbard and Mr. Watson were chosen trustees of the church.

The constitution and by-laws were contained in a single document. The parties have cited several sections of that document as being of particular relevance to the case before us. The clause titled "Property" stated that if the membership could not continue to operate the church, "by reason of financial difficulty or other hindrance," the church would return the real property to Mr. Watson and Mr. Hubbard "as the deed is in their name and they are responsible to First Tennessee Bank for payment of the loan." If, however, the church ceased to function after the loan was paid off, the property would be sold, with the proceeds to go to the Wilson County Baptist Association to help start new churches.

Article II describes the duties of the various officers of the church. Section 8 of that article charges trustees with, among other things, the duty of holding church property in trust, and declares

---

[1] The church's attorney stated at trial that the legal existence of the church should be deemed to have begun by or before September 2, 1999. Likewise, Jeanie Fanning testified that she considered the church to be in operation well before October 10. Although there was much discussion at trial as to the correct date of the founding of the church, we do not believe it to have much bearing on the issues before us.

that they have no power to buy, sell, mortgage, lease or transfer any property without specific authorization by a vote of the church. However, Section 8 also cites the above quoted Property clause and notes that it constitutes a possible exception to those limitations.

Article VI establishes a procedure for amending the constitution and by-laws. Amendments must be presented in writing at two regular business meetings, with copies furnished to each member present. They can then be adopted at a subsequent meeting by an affirmative vote of three-fourths of all voting members of the church present.

## II. The Mortgage Is Paid Off

According to the affidavits of Mr. Hubbard and Mr. Watson, Mr. Weatherly wished to be the first person baptized in the new church building. They informed him that the church could not finance the construction of the building until the mortgage was paid off. After extended discussions with the trustees and with an attorney, Mr. Lee, the Weatherlys agreed to pay off the mortgage loan. They sold some properties they owned, and on or about October 24, 1999, they gave the trustees a cashier's check for $46,519.17 with the bank named as payee.[2] The trustees gave the check to the bank and quitclaimed their property rights to Community Baptist Church of Wilson County.[3]

The exact date of the next significant event in this story is a matter of disagreement between the parties. That event was a special business meeting called to enact an amendment to the constitution of the church, specifically to the Property clause, cited above, which was duly amended to read as follows:

> In the event that Community Baptist Church ceases to be a church for any reason, and a building has not been erected, the property will be deeded to R.C. Weatherly and/or Betty Weatherly or their heirs.
>
> If any building or buildings have been erected at the time the church ceases to be a church, then the property will be sold. Proceeds from the sale will be distributed as follows, $46,519.17 will be returned to R.C. Weatherly and/or Betty Weatherly or their heirs and the balance will be given to the Wilson County Baptist Association to be used to start new churches.

The Weatherly estate contends that the above amendment was adopted on October 24, 1999, essentially contemporaneous to their providing the money to pay off the bank. The estate asserts the amendment was adopted for the express purpose of protecting the interests of the Weatherlys and that it reflects the understanding of the parties at the time the Weatherlys gave the money. However,

---

[2]Mr. Hubbard testified that he and Mr. Watson turned the check over to the bank on October 26.

[3]The quitclaim deed was for the land only. It did not include the trailer on the property. Mr. Hubbard and Mr. Watson argued at trial that as a result they still retained their ownership interest in the trailer, but the trial court ruled against them. They have not appealed the trial court's ruling, so we need not discuss that question any further.

the church asserts the amendment was adopted one year later, on October 24, 2000, and contends that the amendment was a voluntary expression of love towards the Weatherlys in appreciation for what they had done for the church, and that it was not intended to document a condition for a gift which had been given a year before. The church submitted minutes of the meeting adopting the amendment that were dated October 24, 2000.

Whatever love or affection may have existed apparently began to wane. In December of 2000, R. C. Weatherly and his wife, as well as Mr. Watson and Mr. Hubbard, had a falling out with the pastor of the church and with other members, and they stopped attending services. According to the testimony of the church secretary, Betty Weatherly read a statement at the end of a prayer meeting on January 3, 2001, in which she voiced her objections to the direction the church had taken and asked for repayment of the money she and her husband had donated.

The church conducted a quarterly business meeting on January 10, 2001, during which Mr. Watson and Mr. Hubbard were removed as trustees and deacons of the church.[4] At the same meeting, pastor Sten Criscoe first submitted a motion that the church fully reimburse the Weatherlys for the contribution they had made. The motion failed by a vote of nine to six. The pastor then submitted an alternate motion to amend the Property clause of the church's constitution to the effect that in the event the church ceased to operate for any reason, all its property would be donated to the Wilson County Baptist Association for the purpose of creating new churches. That motion passed.

## III. COURT PROCEEDINGS

R.C. Weatherly died on February 8, 2001. On March 15, 2001, Betty Weatherly filed a complaint against the church in the Wilson County Chancery Court.[5] She claimed that the money that she and her husband gave to the church was a loan that was made in reliance on an October 24, 1999 amendment to the church's constitution and by-laws, thereby creating a contract with the church; that the amendment of January 10, 2001 amounted to a breach of that contract; and that the money constituted a purchase money lien on the property. She asked the court to impose a lien *lis pendens* on the property. The lien was duly executed.

Betty Weatherly was diagnosed with cancer in June of 2001. After the diagnosis she moved to the Memphis home of Melody Weston, her daughter. Ms. Weston is a registered nurse, and she took care of her mother during her illness. Betty Weatherly died on April 8, 2002. Ms. Weston qualified as the executrix of her estate and was substituted as a plaintiff in the present lawsuit on October 8, 2002.

---

[4]The minutes of that meeting were erroneously dated January 10, 2000. The contents of those minutes clearly indicate a date one year later. The secretary who prepared the minutes acknowledged the error.

[5]An amended complaint, filed four days later, corrected an error in the amount of money that the first complaint alleged was at issue.

The plaintiff's theory of recovery changed as this case moved towards trial. Although her initial and amended complaints referred to the money that was advanced to the church as a loan, evidenced by a contract in the form of a church resolution, in later filings (including a response to a request for a more definite statement) she suggested that her interest should be considered to be in the nature of a resulting trust. For its part, the church always insisted that the money was a gift, and that nothing in its constitution or bylaws dealing with the property created any beneficial, legal or contractual interest in the Weatherlys or in their heirs.

The church filed a motion for summary judgment on June 21, 2004. Ms. Weston filed a response in opposition to the motion and a memorandum of law. The memorandum recited the previous theory of loan and contract, but also contended for the first time that the money given to the church was a gift subject to a condition subsequent. The church objected to this late introduction of a new theory of recovery, but the trial court allowed it, and allowed Ms. Weston to amend her complaint to incorporate her new theory.

The hearing on the motion for summary judgment was conducted on July 23, 2004, during which the merits of the plaintiff's condition subsequent theory was argued by both sides. The trial court declined to grant the church summary judgment on that issue, and ruled that "[t]here is a genuine issue of material fact as to whether R.C. Weatherly and Betty Weatherly intended to make a gift subject to a condition subsequent when they transferred $46,519.47 to the Defendant on October 26, 1999."

The final hearing of this case was conducted on September 22, 2004.[6] Both Mr. Hubbard and Mr. Watson testified that before the mortgage loan was paid off there were discussions between them, the Weatherlys, and Mr. Lee, an attorney, as to the best way to protect the interests of the Weatherlys and their heirs in the event that the church failed.[7] According to their testimony, the attorney advised against putting restrictions in the deed and recommended that they be protected through church resolutions.

A key witness for the church was Jeanie Fanning. She testified that she was a member of the church from its very beginning and that she attended several meetings of the church prior to its Constitution Day. As church secretary, she took notes during the church's business meetings and referred to those notes when she typed the minutes of those meetings, generally a few weeks later.

---

[6] One unusual feature of the hearing was that neither attorney called for the Rule, and perhaps as a result there was an unusual degree of unanimity of testimony between the witnesses called by each side. Although Mr. Hubbard and Mr. Watson both testified extensively, Mr. Watson was simply asked at one point if he agreed with the testimony of Mr. Hubbard as to some matters, without any further testimony being taken from him as to those matters. Three witnesses for the church were later asked if they were in agreement with the testimony of the other witnesses for the church. They said that they were, and no further testimony was taken from them.

[7] Mr. George Puckett, a current trustee of the church, testified that it was his understanding that only three out of ten attempts to found a new church is crowned with success.

-5-

She was questioned extensively about the minutes of two meetings, one set bearing the date January 10, 2000, and the other October 24, 2000.

Under questioning, she readily admitted that the January 10, 2000 date on one set of minutes had to be incorrect and was just a typographical error. The minutes themselves recited a church account balance as of January 8, 2001, stated that the nominating committee brought a motion to vote on church officers and teachers for the year 2001, and referred to its actions on the division of tithes as being retroactive to January 1, 2001.

As for the meeting that is so critical to resolution of this case, she stated that she was certain that the date of October 24, 2000 was correct. However, she also testified that church meetings were held on Wednesdays and Sundays and on no other days. In its ruling from the bench, the trial court took judicial notice of the fact that October 24, 1999 was a Wednesday, while October 24, 2000 was a Tuesday. While Ms. Fanning insisted under questioning that the disputed meeting took place in 2000, at one point she suggested that perhaps she got the exact date wrong, and that it was actually the 23rd. That date would have been a Monday.

All the witnesses for the church, with one exception, testified that they also were absolutely certain that the meeting in which the amendment regarding the return of the money to the Weatherlys was adopted occurred in October of 2000.[8] They also testified that they had been unaware of any sort of negotiations or deal between the trustees and the Weatherlys in regard to the mortgage on the church property until Betty Weatherly filed suit.

At the conclusion of the proof, the court announced its ruling from the bench. In that ruling and in its subsequent final order of October 11, 2004, the court ruled for the plaintiff, holding that the Weatherlys had made a valid gift to the church subject to a condition subsequent.

The court found that the Weatherlys had given the $46,519 to the church through the trustees with the intent of requiring that the money be returned to them or their heirs if the church ever ceased to operate as a church, and that the church members had amended its bylaws on October 24, 1999 in accordance with that requirement, thereby ratifying the condition. Since the church was still functioning, the court did not order that any payment be made, but it removed the *lien lis pendens* from the property and ruled that Ms. Weston could file the final order in the Office of the Register of Deeds for Wilson County. This appeal followed.

The church raised three issues on appeal: whether the trial court committed reversible error by allowing Ms. Weston to amend her amended complaint to assert a claim that the money donated by her parents was a gift subject to a condition subsequent; whether any such condition was in fact placed on the gift at the time it was made; and whether the controversy was ripe for decision, since the church had never stopped operating. We will discuss each of those arguments in turn.

---

[8]Jessie Hardin testified that although he had probably been there, he didn't have any memory of that particular meeting or its date.

## IV. THE AMENDMENT TO THE AMENDED COMPLAINT

The church claims the trial court deprived it of a "level playing field" by allowing Ms. Weston to raise a new cause of action so late in the course of litigation. Rule 15.01 of the Tennessee Rules of Civil Procedure allows a party to amend its pleadings once as a matter of course at any time before a responsive pleading is served. "Otherwise a party may amend the party's pleading only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires." Rule 15.01 has been construed to give our courts broad discretion when determining whether to allow the amendment of complaints. *Henderson v. Bush Bros. & Co.*, 868 S.W.2d 236, 238 (Tenn. 1993); *Harris v. St. Mary's Medical Center*, 726 S.W.2d 902, 904 (Tenn. 1987); *Merriman v. Smith,* 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979). A trial court's decision to allow amendment will not be reversed on appeal unless an abuse of discretion has been shown. *Welch v. Thuan*, 882 S.W.2d 792, 793 (Tenn. Ct. App. 1994); *Wilson v. Ricciardi*, 778 S.W.2d 450, 453 (Tenn. Ct. App. 1989).

As the rule indicates, in general, permission to amend should be liberally granted. The reason is "to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties." *Doyle v. Frost*, 49 S.W.3d 853, 856 (Tenn. 2001); *Karash v. Pigott*, 530 S.W.2d 775, 777 (Tenn. 1975). Factors the trial court should consider when deciding whether to allow amendments include "undue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Harden v. Danek Medical, Inc.,* 985 S.W.2d 449, 454 (Tenn. Ct. App. 1998); *Merriman v. Smith*, 599 S.W.2d at 559.

In the case before us, the church was long aware that Ms. Weatherly and, later, her heirs sought return of the money the Weatherlys had provided to pay off the mortgage on the land. The church was also long aware that the Weatherlys relied in part on the amendment of the church's constitution that provided for return of the money or transfer of the land to the Weatherlys upon the occurrence of specified circumstances. Throughout the litigation the church contended the money was a gift. In her amendment to the complaint, Ms. Weston agreed with the church that the money was a gift, but alleged it was conditioned on the circumstances described in the church's revision to its constitution. No new evidence was required to resolve the issue. In other words, the amendment did not implicate additional evidence of which the church had been unaware and did not change the relief sought. *See Hunt v. Temco, Inc.,* 452 S.W.2d 879, 888 (Tenn. Ct. App. 1969)(late-filed amendment asserting *quantum meruit* theory of recovery for first time permitted because (1) same evidence could have been used to support either *quantum meruit* or contract pleadings and (2) the measure of damages was the same for each theory). Consequently, we can find no prejudice to the church's ability to defend the lawsuit due to the amendment of the complaint. The church was unable to point to any.

Further, the delays in the present case were at least partially due to the terminal illness and absence from the area of the original plaintiff, Betty Weatherly. There was no indication that the plaintiff acted in bad faith, and the amendment could not be considered futile.

Accordingly, the trial court acted within its discretion to allow Ms. Weston to amend her complaint to advance a new theory of recovery.

## V.  A GIFT WITH CONDITION SUBSEQUENT

It is undisputed that the money advanced by the Weatherlys for the benefit of the Community Baptist Church was intended to be a gift to the church and that the church accepted the gift. The church insists that the Weatherlys' gift was unconditional, with no strings attached. Ms. Weston contends that the church accepted the gift with the condition regarding its return if the new church was unsuccessful.

Gifts for charitable purposes, including gifts for the advancement of religion or to religious organizations, are common and have long been recognized in the law. *See*, *e.g.*, *Dickson v. Montgomery*, 31 Tenn. 348, 362 (1851). It is also not uncommon for donors making such gifts to impose conditions on them. *Tennessee Division of the United Daughters of the Confederacy v. Vanderbilt University*, 174 S.W.3d 98, 114 (Tenn. Ct. App. 2005). "[A] donor, by a condition subsequent, may limit his gift to a particular purpose and render it so conditioned and dependent on an expected state of facts that where the state of fact fails, the gift fails with it, if such condition is not illegal or against public policy." 28A C.J.S. Gifts § 38.

> The owner of personal property may make a gift thereof to another person (the donee) in which the donor retains a reversionary interest by delivering the personal property to the donee, or to a third person for the donee, with the manifested intention that the donee acquire an ownership that terminates -
>
> (1) after the passage of some specified period of time; or
>
> (2) on the occurrence or nonoccurrence of some event or condition.
>
> Acceptance of the gift by the donee is required for completion of the gift.

RESTATEMENT, SECOND, PROPERTY (DONATIVE TRANSFERS) § 31.2.

The question in the case before us is whether the gift of money to the church by the Weatherlys was a complete, unconditional *inter vivos* gift or whether it was a gift with a condition attached. If it was an *inter vivos* gift, meeting all the legal requirements therefor,[9] then it became irrevocable upon delivery of the money. *Franklin v. Moss*, 101 S.W.2d 711, 714 (Mo. 1937). However, if it was a gift subject to a condition subsequent, the gift is subject to forfeiture upon

---

[9] To establish a *inter vivos* gift, the donee must prove donative intent on the part of the donor coupled with delivery of the property to the donee. *Lowry v. Lowry*, 541 S.W.2d 128, 130 (Tenn. 1976); *Hansel v. Hansel*, 939 S.W.2d 110, 112 (Tenn. Ct. App. 1996). Intent and delivery must be clearly proved, and "doubts must be resolved against the gift." *Figuers v. Sherrell*, 178 S.W.2d 629, 632 (Tenn. 1944).

noncompliance with the condition. *United Daughters of the Confederacy*, 174 S.W.3d at 115; *Southwestern Presbyterian Univ. v. City of Clarksville*, 259 S.W. 550, 554 (Tenn. 1924).

Whether or not a gift was unconditional is a question of intent. Where the gift is made by or through a document, such as a deed, will, or contract, that intent can be gleaned by express language in the conveying document. *United Daughters of the Confederacy*, 174 S.W.3d at 114 ("A conditional gift is enforceable according to the terms of the document or documents that created the gift.") The Weatherlys' gift herein was not made by document. That is, they did not transfer the money by will or contract, and they did not transfer any land by deed or otherwise. In such situations, the intent of the parties can be gleaned from any other express language regarding intent or from circumstances surrounding the transfer. 28A C.J.S. Gifts § 38. "Because noncompliance results in a forfeiture of the gift, the conditions must be created by express terms or by clear implication and are construed strictly." *United Daughters of the Confederacy*, 174 S.W.3d at 115 (citing *Southwestern Presbyterian Univ.*, 259 S.W. at 558).

In the case before us, although the gift was not effectuated through a document, there is a document setting out the condition asserted by the Weatherlys. The language of the amendment to the church constitution expressly limits use of the money given by the Weatherlys in the event the newly-formed church ceased to exist. The question is whether the amendment evidences the intent of the parties at the time the gift was made. *See Ewing v. Hladky Constr., Inc.*, 48 P.3d 1086, 1089 (Wyo. 2002); *Courts v. Annie Penn Memorial Hospital, Inc.*, 431 S.E.2d 864, 866 (N.C. Ct. App. 1993) (holding that the intent of the donor to condition a gift must be measured at the time of the gift).

In other words, did the amendment reflect the Weatherlys' intent to place a condition subsequent on their gift and the church's intent to accept the gift with the condition attached? If the amendment was adopted essentially contemporaneously with the gift and the church's use of the money to pay off the mortgage, the answer becomes clear. In that situation, the amendment provides express language establishing the condition. Additionally, the circumstances taken as a whole would clearly indicate a mutual intent to place the condition on the gift. Thus, the determinative question is a factual one: when was the amendment adopted? Was it October 24, 1999 (at the time of the gift and the church's establishment) or one year later, October 24, 2000?

The trial court found that the amendment was adopted on October 24, 1999. On appeal, that finding of fact is entitled to a presumption of correctness unless the evidence preponderates against it. Tenn. R. App. P. 13(d). The testimony as to the date of the crucial meeting was highly controverted. Mr. Hubbard and Mr. Watson testified that it took place in 1999 at about the same time the Weatherlys gave them the $46,000 check, although they admitted on cross-examination that they did not remember the exact date. Some current and former members of the church testified to the contrary that they clearly remembered the meeting as actually occurring in 2000.

The minutes of that meeting, typed by Jeanie Fanning, were dated October 24, 2000. However, Ms. Fanning admitted that she had mistakenly put the wrong date on the minutes of a later meeting. She also testified that all meetings of the church took place on Sundays or Wednesdays, without exception. In its ruling from the bench, the trial court took judicial notice of the fact that October 24, 1999 was a Wednesday, while October 24, 2000 was a Tuesday.

The church argues on appeal that the court erred in believing the testimony of Mr. Hubbard and Mr. Watson over its own witnesses; that only two witnesses testified that the disputed meeting took place in 1999, while a greater number testified that the meeting took place in the year 2000; and that the court mistakenly characterized all of the church's witnesses as interested witnesses, when in actuality some of them were no longer members of the church, and so should be considered no more interested in the outcome of the proceedings than were Mr. Hubbard and Mr. Watson.

None of these arguments convinces us that the evidence preponderates against the trial court's finding. The preponderance of the evidence is not determined by the number of witnesses who testify to a fact or to a set of facts. *See Robertson v. State,* 221 S.W.2d 535, 536 (Tenn. 1949); *Christian v. State*, 197 S.W.2d 797 (Tenn. 1946). Conflicts in testimony require the trial court to determine the relative credibility of the testifying witnesses. *Fielder v. Lakesite Enterprises*, 871 S.W.2d 157, 160 (Tenn. Ct. App. 1993). When reviewing factual findings based on credibility we must give considerable deference to the trial courts, because they are in a far better position to observe the demeanor of witnesses than are the appeals courts. *Jones v. Garrett*, 92 S.W.2d 835, 839 (Tenn. 2002); *McCaleb v. Saturn Corp*., 910 S.W. 412, 415 (Tenn. 1995); *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000).

We conclude the evidence does not preponderate against the trial court's finding that the amendment to the church's constitution was adopted at a meeting on October 24, 1999. The amendment on that date corroborates the testimony regarding the Weatherlys' intent. The trustees testified that, prior to the gift, the Weatherlys stated they wanted to be protected in the event the new church did not succeed. They also testified that an attorney advised all of them to provide for that protection through a church resolution. It was clearly the intent of the donors and the trustees that the gift be subject to the subsequent condition. The minutes of the meeting at issue recite that the meeting was called for the purpose of amending the "Property" clause of the church's constitution. The amendment, adopted at the time of the gift, evidences the intent of the church to accept the gift with the condition attached.[10] Accordingly, we conclude that the trial court correctly determined that the Weatherlys' gift of money was subject to the condition established in the amendment to the church constitution.

---

[10] Because the amendment evidences the church's acceptance of the gift with the condition attached, the church's arguments regarding the trustees' authority to agree to the condition are irrelevant.

-10-

## VI. EFFECT OF CONDITION

The condition established in the amendment has clear language of reversion. In other words, the language states that if the condition failed, the money or its equivalent would be returned to the donors or their heirs. In a conditional gift situation, the right of the donor (or his heirs) to recover the gift depends upon the failure of the condition. *United Daughters of the Confederacy*, 174 S.W.3d at 114-15; *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 776 (Md. Ct. App. 2004). In this case, the triggering event for the return is the church's ceasing to be a church.

The church argues that it eliminated any obligation it might have owed to the Weatherlys or their heirs by deleting any provisions for their benefit by amending its Property Clause on January 10, 2001. This amendment purported to delete the condition attached to the gift. The church relies on Tenn. Code Ann. § 48-60-101(a), which allows a non-profit corporation to "amend its charter at any time to add or change a provision that is required or permitted in the charter or to delete a provision not required in the charter." However, while the church may have the right to modify its governing documents as it sees fit, it cannot effectively disclaim its obligations by such unilateral action. *United Daughters of the Confederacy*, 174 S.W.3d 98 at 118 (holding that the recipient of conditional gift may not unilaterally repudiate the condition, even after the passage of many years).

The church also argues that the trial court's final order gave the plaintiff "a greater and more expansive interest in the real property than the interest held by the original grantor." As we interpret it, the church is objecting to the fact that while the Weatherlys only gave a gift of money, the court's final order held out the possibility (however remote) that the plaintiff might eventually obtain the church's real property. It is true that when the donee of a conditional gift ceases to comply with the condition, the donor's remedy is generally limited to recovery of the gift. *United Daughters of the Confederacy*, 174 S.W.3d at 114. However, where the gift is money, a court may order that the donee return the amount originally given as well as an additional amount to reflect the current value of the gift. *Id*., 174 S.W.3d at 119 (holding that in order to return the gift the donee would be required to pay an amount based on the consumer price index to account for the changed value of the original donation).

Additionally, the Weatherlys' monetary gift was used to pay off the debt on the land, and the church and the Weatherlys agreed that, if the church ceased to exist before a building was erected, the land would be deeded to the Weatherlys or their heirs. We find no basis for ignoring the agreed-upon condition. Should the church cease to exist before a building is built, the value of the land at the time may or may not be equivalent to the current value of the original gift. That is not a question, however, that the courts must answer at this time.

The church's real objection, however, is that the filing of the court's final order with the Register of Deeds effectively placed a cloud upon its title, making it difficult to obtain a mortgage to improve the property. The church therefore asks us to modify the court's order to limit the

donor's remedy for failure of the condition subsequent to recovery of the monetary gift and to eliminate any reference to the property itself. For the reasons set out, we decline to do so.

The church's final argument is that even if the court believed that a valid condition subsequent had been placed on the Weatherlys' gift, the question was not yet ripe for decision because "Defendant continues as of this date to be a thriving, functioning church," and thus the triggering condition had not yet occurred.

The trial court observed that the church's amendment of its bylaws on January 10, 2001 put the Weatherlys on notice that their rights had been placed at risk, and they therefore were justified in taking action to protect those rights. The court suggested that, if nothing else, they were entitled to a declaratory judgment to determine the nature of their interest. *See* Tenn. Code Ann. § 29-14-102 (stating that "[c]ourts of record within their respective jurisdictions may declare rights, status and other legal relations whether or not further relief is or could be claimed").

The trial court also observed that no time limit had been placed upon the condition, and thus if the church were to cease existence sometime in the distant future, the court would face the exact same question as the one currently before it, but its ability to correctly determine the rights of the parties would be rendered far more difficult due to the passage of time, the deterioration of documentary evidence and the fading of the memories of witnesses. *See HCA v. American Protection Insurance Co.*, 174 S.W.3d 184, 207 (Tenn. Ct. App. 2005).

We agree with the trial court. Ms. Weston, on behalf of the Weatherly estate, was entitled to a declaratory judgment as to the rights or interests of the estate related to the conditional gift made by the Weatherlys.

**VII.**

We affirm the order of the trial court. Remand this case to the Chancery Court of Wilson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Community Baptist Church of Wilson County.

_____
PATRICIA J. COTTRELL, JUDGE

-12-